**SIGNED this 30th day of August, 2006.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| SCHLOTZSKY'S, INC., ET AL., | 04-54504-C |
| DEBTOR | CHAPTER 11 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SCHLOTZSKY'S, INC. | |
| PLAINTIFF | |
| V. | ADV. NO. 05-5109 |
| GRANT THORNTON, L.L.P. | |
| DEFENDANT | |

### DECISION ON DEFENDANT'S MOTION TO ABSTAIN AND MOTION TO DISMISS

Before the court is defendant's motion to abstain or in the alternative to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure. For the reasons stated, the defendant's motion to abstain is denied. The defendant's motion to dismiss for failure to state a claim is granted in part and denied in part.

1

# BACKGROUND[1]

The Creditors' Committee has sued Grant Thornton for alleged auditing failures relating to the firm's handling of the pre-petition debtor's "acquisition" of certain Area Developer Agreements from NS Associates. Schlotzsky's[2] entered into area developer agreements with persons or entities who were charged with both recruiting new franchisees and handling some of the management tasks for existing franchisees within a certain area, in exchange for a portion of the franchise revenue. One of the largest of these ADA's involved NS Associates, covering Dallas, Houston and San Antonio. The agreement was entered into in 1996.

A few years later, Schlotzsky's initiated a strategy of either re-negotiating the terms of some of these area developer agreements or buying them out outright, with the goal of obtaining a new source of financing by securitizing the franchise revenue stream. The reacquisition transaction with NS Associates forms the basis of this lawsuit, as the committee alleges that Grant Thornton improperly characterized the debtor's exercise of the option in the agreement as an "acquisition of intangible assets," thereby impermissibly permitting the offset of 100 percent of the Option price. The Committee maintains that the transaction should have been recorded as an expense because it was more properly characterized as a contract termination fee. According to the Committee, accounting for the transaction as did Grant Thornton allegedly caused the Debtor's financial statements to falsely show an increase in intangible assets of more than $25 million offsetting the $23 million liability recorded, artificially masking the company's insolvency. The Committee also alleges that the assets were worth substantially less than $25 million, evidenced by the major write-down by the Debtor after filing.

Grant Thornton was hired to perform a fiscal year 2002 audit. It was re-engaged for the following fiscal year as well. The Committee in its complaint charges that Grant Thornton failed

---

[1] The background facts as set out herein are descriptive only and should not be construed as findings.

[2] In this generic description, the reference to Schlotzsky's is actually a reference to a number of related corporate entities through which business was conducted.

2

to abide by Generally Accepted Accounting Standards (GAAS) as it had promised to do in its audit engagement letters. The Committee alleges that Grant Thornton failed to abide by the AICPA standards, also in breach of the engagement letter, for quarterly audits it performed. The Committee says that these failures caused Schlotzsky's to become more insolvent because, had the companies directors and officers known the Debtor's real financial condition they would not have allowed it to incur additional debt. The complaint alleges the following specific causes of action:

1. Professional Negligence for 2002 and 2003 Audits

2. Breach of Contract for 2002 and 2003 Audits

3. Aiding and Abetting Breaches of Fiduciary Duties

4. Negligent Misrepresentation

5. Gross Negligence

6. Equitable Subordination pursuant to 11 U.S.C. § 510(c)

7. Avoidance of Preferential Transfers pursuant to 11 U.S.C. §§ 547(b) and 550.

## MOTION TO ABSTAIN

Grant Thornton first urges the court to abstain from hearing the state law causes of action urged in the complaint. Grant Thornton admits that mandatory abstention does not apply in this action because the action had not previously been commenced in state court prior to the bankruptcy filing. *See* 28 U.S.C. § 1334(c)(2). Grant Thornton argues however that the court should exercise its discretion under the permissive abstention provisions of section 1334(c)(1), because the majority of the claims are state law claims. *See* 28 U.S.C. § 1334(c)(1). It adds that the federal actions pleaded by the Committee are only loosely connected to the state law claims

The Committee, in its response, argues that "only noncore matters are suitable for permissive abstention,"[3] and that the preference and equitable subordination actions are certainly

---

[3] Committee Response at 3 (quoting *In re Terracor,* 86 B.R. 671, 675 n.11 (Bankr. D. Utah 1988) which cites *In re Arnold Printworks, Inc.* 815 F.2d 165, 171 (1st Cir. 1987)).

core proceedings. *See In re Wood,* 825 F.2d, 90, 96-97 (5th Cir. 1987). The state law-based actions are sufficiently related to these core matters that they should be retained, says the Committee, adding that the fact that a given matter may be controlled by state law is insufficient of itself to render the matter noncore. *See* 28 U.S.C. § 157(b)(3).

In *Fairchild Aircraft Corp.*,[4] this court observed that discretionary abstention should not be employed in a manner that works to undermine the important bankruptcy policy, expressed in the Bankruptcy Reform Act of 1978, favoring "a single forum for the adjudication of all matters relating to the bankruptcy case...."[5] As a general rule, the court noted that "[a]bstention is not a favored doctrine in the federal system...[because] federal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to State court would clearly serve an important countervailing interest."[6] That said, by the same token, abstention as set out in section 1334(c) serves the special function of acting as a salutary curb on the otherwise boundless scope of jurisdiction conferred by section 1334(b). *See Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987).[7]

Whether permissive abstention is appropriate in a given case will, of necessity, be driven by equitable considerations germane to that case. The court's decision to abstain or not will only

---

[4] 1990 WL 119650 (Bankr. W.D. Tex. 1990).

[5] *Id.* at *2.

[6] *Id.* (internal quotations omitted).

[7] Said the Fifth Circuit,

> The district court [below] expressed its concern that an overbroad interpretation of section 1334 would bring into federal court matters that should be left to state courts to decide. We have also expressed the same concern. There is no necessary reason why that concern must be met by restrictive interpretations of ... section 1334. The [Bankruptcy Amendments and Federal Judges Act of 1984] grants the district court broad power to abstain whenever appropriate "in the interest of justice, or in the interest of comity with State courts ... The abstention provisions ... demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of the federal courts, but by the discretionary exercise of abstention when appropriate in a particular case.

*See id.; see also* S.REP.NO. 95-989, 95th Con, 2nd Sess 154 (1978); H.REP.NO. 95-595, 95th Cong, 1st Sess (1977) (both addressing the intended operation of similar abstention provisions enacted as section 1471(d) of title 28, and making the same observations).

be disturbed upon a showing of an abuse of discretion. *See Matter of Howe*, 913 F.2d 1138, 1143 (5th Cir. 1991). Many courts, in an effort to give expression to the parameters of that discretion, have developed multi-factor tests.[8] While helpful, they are by their very nature, not dispositive. Mechanical applications of such tests to rule on equitable issues that are heavily fact-specific are often doomed to produce incorrect outcomes.[9] The various tests offered by these opinions must be viewed in the larger context of the task presented – to arrive at the equitable application of the permissive abstention doctrine, as appropriately applied in the bankruptcy context. Or, more simply, we must avoid losing the forest for the trees. *See Murphy v. Uncle Ben's, Inc*., 168 F.3d 734, (5th Cir. 1999) ("[t]he decision whether to surrender jurisdiction because of parallel state court litigation does not rest on a "mechanical checklist" of [abstention] factors, but on a 'careful balancing' of them, 'as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'), *citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, (1983)).

The larger context of permissive abstention is informed by the base principles that led to its inclusion in the bankruptcy jurisdiction statute in 1978. Those principles included the importance of centralized administration in one forum, the breadth of bankruptcy jurisdiction intended to have been conferred, the need to deal with unexpected exigencies or to step back when the matter to be litigated is especially important to be resolved in a state forum,[10] and the need to do justice (as well as to avoid doing an injustice).[11]

---

[8] *In re Denton County Elec. Co-Op, Inc.,* 281 BR 876, 881 and notes 10-11 (Bankr. N.D. Tex.) (citing cases from the 7th and 9th Circuits and bankruptcy districts in the southern and northern districts of Texas).

[9] A person is sent into a crowded room with directions to find Judge Clark by applying the following multi-factor test : (1) tall, (2) blond hair, (3) angular features, (4) dressed stylishly, and (5) having a resonant voice. The person returns with David Bowie in tow. If the person had simply been given a recent picture of Judge Clark (which would have been worth far more than all the factors one could write down on a piece of paper), chances are he would have quickly returned with the judge, not the singer.

[10] The legislative history specifically cited to *Thompson v. Magnolia Petroleum*, 309 U.S. 478 (1940), a case which involved the intersection of federal bankruptcy jurisdiction with the State of Texas' strong interest in regulating the law surrounding the development and sale of oil and gas in that state.

[11] The example offered in the legislative history involved a preference for not abstaining if the matter in question could not be brought elsewhere.

In this case, the Committee has chosen the federal court as its preferred forum, as is its right. Federal courts generally will respect this right, and even speak of a "duty to sit" so as to afford the plaintiff the forum that the plaintiff first selected (so long as jurisdiction exists and there is no obvious abuse). *See e.g., Berthelot v. Boh Bros. Const. Co. L.L.C.,* 431 F.3d 639, 651 (E.D. La. 2006). Some courts speak of permissive abstention as an appropriate antidote for "forum shopping," *see, e.g., In re Encompass Servs. Corp.,* 337 B.R. 864 (Bankr. S.D. Tex. 2006), but the evil is often in the eye of the beholder. *All* plaintiffs who have a choice of forums in which to bring litigation engage in *de facto* "forum shopping" as soon as they pick one available forum over the other. All defendants who have the ability to do so similarly engage in "forum shopping" when they remove state court litigation to federal court, or when they invoke a particular remedy (such as a jury demand) in order to get out of the bankruptcy court and into the district court. In all these situations, however, the parties are simply exercising rights afforded them under the law – rights which *can* serve their interest in selecting the forum they deem most favorable, but which are no less rights entitled to vindication regardless the motivation behind their use.

For forum shopping to become a significant factor in the abstention calculus, it must rise to a level demonstrating an attempt to abuse or manipulate the judicial process. The Fifth Circuit has said (albeit in the context of a declaratory judgment action brought by insurance company) that

> [T]he fact that federal forums are sought by some [plaintiffs] in an attempt to avoid the state court system, does not necessarily demonstrate impermissible forum selection when the declaratory judgment out-of-state plaintiff invokes diversity. Rather it states the traditional justification for diversity jurisdiction, to protect out-of-state defendants. *Sherwin-Williams*, 343 F.3d at 399 (internal citation and quotation marks omitted). Instead, a court is more likely to find a plaintiff engaged in impermissible forum shopping where the federal action would change the applicable law. *See id.* at 397, 399; *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n. 3 (5th Cir. 1983).

*AXA Re Property & Cas. Ins. Co. v. Day*, 162 Fed. Appx. 316, 320 (5th Cir. 2006); *see generally Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003). The facts of this case do not in any way raise the spectre of impermissible forum shopping.

Centralized administration of the estate is another important consideration in the abstention calculus, as the pervasive jurisdiction created for bankruptcy matters was crafted primarily to achieve that end. Abstention runs counter to that goal, obviously. It functions as a kind of safety valve, authorizing the court to abstain (thereby sending the parties to a state court forum) when the exigencies of the case and the interests of justice overcome the need for centralized administration. *See Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1986).

This adversary proceeding was commenced well prior to the confirmation of the debtor's plan, and was initiated by the Official Creditors' Committee with the permission of the court because the debtor-in-possession was not positioned (or motivated) to litigate with its auditors. The Committee represented the constituency with the greatest economic stake in the litigation. The DIP, meanwhile, was focused primarily on wrapping things up, after selling substantially all of the operational assets of the estate to a third party relatively early in the case. On these facts, the importance of centralized administration was certainly relevant at the time the litigation was commenced, though that importance has faded somewhat now that a plan has been confirmed. Still, there are efficiencies gained from the fact that the court in which the matter has been brought is familiar with the context of the litigation and the general background of the debtors.

Cutting against these considerations are the fact that the professional misconduct, breach of conduct, negligent misrepresentation, and knowing participation causes of action in the complaint are governed by state law. Some of the causes of action (including the deepeing insolvency allegation and the knowing participation action) involve relatively unsettled legal issues. The defendant also notes that, at some point, it intends to ask for a jury. Is it unjust,

given these considerations, for this court to retain the matter, given that this is plaintiff's preferred choice of forum?

The short answer is that it is not. The legal issues informing this litigation are indeed grounded in state law, but so also are many of the legal issues which confront a bankruptcy court. State law controls issues of property of the estate, the allowance of claims, the determination of exemptions, the validity and perfection of secured claims, various actions which can be brought under section 544(b), and questions surrounding the enforceability, severability, and remedies associated with executory contracts. Actions for legal malpractice are governed in this state by a fairly well-developed (and well-settled) body of case law. The court has previously entertained a cause of action much like the one presented here, with the concurrence of the district court. *See* Order Accepting Report and Recommendation of the Bankruptcy Judge, *Blackwell v. Deloitte & Touche, LLP*, SA-03-143-FB (July 30, 2003). There too the plaintiff sought damages for legal malpractice, breach of contract, gross negligence, and knowing participation in breach of fiduciary duty. Such actions have, increasingly, been brought in federal court as a direct result of the filing of an enterprise whose downfall has been alleged to have been caused, at least in part, by accounting irregularities. *See*, *e.g.*, *In re Southmark*, 163 F.3d 925 (5th Cir. 1999); *In re Southeast Banking Corp.*, 144 F.3d 732 (11th Cir. 1998). There seems, on these facts, to be little in either the nature of the action brought, or the decisional law controlling the action, that calls for abstention to avoid an injustice.

Nor can the procedural impediments imposed by this action's being brought in federal bankruptcy court serve as a basis for abstention, for a simple, common sense reason. Such a rule would mean that abstention is indicated *whenever* a noncore, related action is brought in federal bankruptcy court.[12] Unless we are to read Congress' own enactment of section 157(c)(1) of title

---

[12] Section 157(c)(1) directs a bankruptcy court to submit proposed findings and conclusions for consideration by the district court, which enters any judgment in the matter. The district court can review *de novo* those matters to which a party has timely objected. 28 U.S.C. § 157(c)(1). The bankruptcy judge can enter final judgment only with the consent of both parties. *Id.* The district court may withdraw the reference if the matter cannot be tried by the bankruptcy court, due to a combination of a valid jury demand and lack of consent to the bankruptcy court's conducting the jury trial by at least one

28 as a perverse sort of statutory self-fulfilling prophesy, that section's operation should not factor into the abstention calculus. Nor ought we to institute a rule of decision that in effect rewards the party seeking abstention if that party insists on being as obstructionist as possible by refusing to consent either to the entry of final judgment by the bankruptcy judge or the conduct of a jury trial by that court.[13]

In short, the court concludes that the motion for permissive abstention ought not be granted, and the same is accordingly denied.

## MOTION TO DISMISS

When considering a motion to dismiss, the court must accept as true all well-pleaded facts and view them in a light most favorable to the plaintiff. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992); *see also General Electric Capital Corp. v. Posey*, 415 F.3d 391, 394 (5th Cir. 2005) ("A claim will not be dismissed unless the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief").

### *Claims for Breach of Contract and for Attorney's Fees*

Grant Thornton argues that Texas courts routinely dismiss breach of contract claims against professionals when the complaint is based upon a violation of a professional's duty of care because professional negligence claims arise solely in tort. Without a breach of contract claim, no attorney's fees can be awarded. *See* TEX. CIV. PRAC. & REM. CODE § 38.001.

The Committee argues that the breach of contract claims are not based exclusively on a violation of Grant Thornton's professional duty of care, but rather the failure of Grant Thornton to comply with the express terms of its contractual agreements with Schlotzsky's.

---

party. *See Matter of Clay*, 35 F.3d 190 (5th Cir. 1994); *see also* 28 U.S.C. § 157(d), (e).

[13] There may be entirely valid reasons for a party's not consenting independent of the abstention argument. *See Matter of Clay*, *supra*. However, a party cannot be heard to argue its own non-consent as a *basis* for abstention. After all, non-consent simply moves the matter to the district court for final adjudication, while abstention removes the matter from the federal courts entirely. If the party in fact prefers not to be in federal court at all, there is less equitable justification for that same party's taking steps to get *into* federal district court. Equity does not operate in that fashion.

The defendant is correct in its statement of Texas law, which prohibits the "fracturing" of a professional malpractice action by use of a breach of contract action. *See Askanase v. Fatjo*, 828 F.Supp. 465, 469 (S.D.Tex. 1993) (gathering Texas law on the point). In *Blackwell v. Deloitte & Touche, LLP*, however, this court wrote in its recommendation to the district court that "at this early stage in the proceedings, it is not certain that plaintiff could prove no set of facts in support of a breach of contract action which is separate from his claim for negligence/professional malpractice." The district court accepted that recommendation, over the objection of the defendant. *See* Order Accepting Report and Recommendation of the Bankruptcy Judge at 3, *Blackwell v. Deloitte & Touche, LLP*, CA SA-03-CA-143-FB (July 30, 2003). There could, in theory, be causes of action which are uniquely contractual in nature, as there were in the *Blackwell* matter. In that case, the court observed that there were some terms in the engagement letter that were "more truly contractual" ... for example "a failure to disclose irregularities, illegal acts, or reportable conditions to the board of directs would directly contravene an express contractual duty set out in the engagement letter." *Id.*

The problem for the Committee here is that it relies on the same exact allegations for its breach of contract claims as it does its negligence/malpractice claims (failure to abide by the US GAAS and AICPA standards). When a plaintiff's breach of contract claim is nothing more than a thinly disguised restatement of a claim for breach of a professional's duty, the claim cannot stand. *Askanase v. Fatjo*, *supra*.[14] This action cannot stand as currently pleaded. Nonetheless, given the standard for dismissal under Rule 12(b)(6) so recently reiterated by the Fifth Circuit in *Posey*, the court best avoids error by affording the plaintiff the opportunity to replead its contract action with facts and allegations that will survive the legal standard set by Texas law. If the plaintiff fails to replead within twenty days of entry of this decision and order, then the breach of

---

[14] *See Goffney v. Rabson,* 56 S.W.3d 186, 191 n.4 (Tex. App. - Houston 2001); *Jordan v. Bustamante,* 158 S.W.3d 29, 36 (Tex. App. Houston 2005); *Archer v. Medical Protective Co. of Ft. Wayne,* 2004 WL 119445 at *4 (citing cases); *see also FDIC v. Ernst & Young,* 967 F.2d 166, 172 (5th Cir. 1992).

contract cause of action will be dismissed for failure to state a claim for which relief can be granted.

### *Claim for Aiding and Abetting Breach of Fiduciary Duty*

Texas does not currently recognize a claim for aiding and abetting breach of fiduciary duty, as such. Texas does recognize a claim for knowing participation in breach of fiduciary duty, however.[15] The Committee itself asserts that aiding/abetting and knowing participation are one in the same. Response at 20. An action will not be dismissed for failure to state a claim simply because the plaintiff misnames the claim. As the Fifth Circuit observed in *Posey*,

> Rule 8(a)(2) merely requires that a plaintiff recite a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

*Posey*, *supra* at 396. The complaint satisfies this generous pleading standard.

Grant Thornton also argues that the Complaint does not allege sufficient facts for a "knowing participation" claim even using a "constructive" knowledge standard. Motion to Dismiss at 13. The objection has merit, though for a slightly different reason than that suggested by Grant Thornton. The Complaint does not sufficiently tie Grant Thornton's conduct to any wrongful conduct on the part of officers or directors of the debtor that would constitute a breach of fiduciary duty. Specifically, the Committee alleges:

> John C. Wooley, Jeffrey J. Wooley, Floor Mouthaan and Raymond A. Rodriguez breached their fiduciary duties of due care owed to the Debtors by, among other things, failing to ensure that Schlotzsky's financial statements were prepared in accordance with GAAP and by failing to take action to prevent the Debtors' deepening insolvency. Grant Thornton's audit failure aided and abetted this conduct.

---

[15] *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).

11

Complaint at 19. At best, this allegation, accepted as true, would demonstrate negligence on the part of the officers and directors, but not a breach of their fiduciary duty. Even if the failure to supervise were characterized as a breach of fiduciary duty, it is difficult to comprehend how Grant Thornton could "knowingly participate" in a breach of fiduciary duty described as "failure to supervise the auditors," by failing to perform the audit properly. It makes not sense to say that Grant Thornton knowingly participated in the officers' failure to supervise Grant Thornton – especially if that "knowing participation" consisted solely of not performing the audit properly due to an alleged lack of supervision.

Once again, however, mindful of the difficult standard for dismissal set by *Posey*, the court will permit the Committee to replead this claim, if it can. If the claim is not repleaded, then the claim will be dismissed.

*Claim for Exemplary Damages*

Grant Thornton argues that the Committee must plead that Grant Thornton's conduct was grossly negligent pursuant to section 41.003 of the Texas Civil Practice and Remedies Code. Therefore, Grant Thornton argues, the Committee must plead that "1) Grant Thornton's alleged negligent acts when viewed objectively from Grant Thornton's perspective involved an extreme degree of risk, considering the probability and magnitude of the harm; and (2) Grant Thornton had actual, subjective awareness of the risk involved but proceeded in conscious indifference to its client's rights, safety or welfare.

The Committee argues that it has properly pleaded this claim because it has tracked the statute:

> Grant Thronton's wrongful acts … were aggravated by the kind of conduct for which the law permits exemplary damages. When viewed objectively from Grant Thornton's viewpoint at the relevant times, Grant Thornton's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to the Debtors. Further, Grant Thornton was subjectively aware of the risks involved, but proceeded with

12

        conscious indifference to their duties and to the rights and welfare of the debtors."

Complaint at para. 74. As *Posey* tells us, under Rule 8(a), a party need only set out a "short and plain statement of the claim showing that the pleader is entitled to relief." *Posey*, *supra*, citing Rule 8(a), Federal Rules of Civil Procedure. The plaintiff has met that standard. The claim as pleaded withstands the motion to dismiss.

### *Conclusion on Motion to Dismiss*

For the reasons set forth above, the Committee's claims for breach of contract and aiding and abetting breach of fiduciary duty will be dismissed unless the plaintiff repleads in accordance with this decision within twenty days of its entry.

### **CONCLUSION**

An Order will be entered consistent with this decision.

### # # #